■ PETER BONANNI, Respondent, v STRAIGHT ARROW PUBLISHERS, INC., et al., Appellants.—Order, Supreme Court, New York County (Harold Baer, Jr., J.), entered December 26, 1986, which granted plaintiff-respondent's cross motion for leave to amend the complaint, denied individual defendant-appellant's motion for summary judgment with leave to renew, and ordered him to submit to discovery, reversed, on the law and the complaint dismissed in its entirety as to appellant Jann S. Wenner, without costs.

Respondent Peter Bonanni entered into an employment agreement with appellant Straight Arrow Publishers, Inc.,* in March 1982, to serve as publisher of Rolling Stone Magazine and executive vice-president of Rolling Stone Magazine Productions for three years. The agreement was negotiated and signed by James S. Dunning, Jr., who was then president and chief executive officer of Straight Arrow. It is undisputed that appellant Jann S. Wenner, the principal shareholder and chairman of Straight Arrow's board of directors, took no part in negotiating or finalizing this contract. Shortly after respondent assumed his post, Dunning left the company and respondent then reported directly to Wenner.

Under the agreement, respondent was to supervise and directly participate in Straight Arrow's marketing and sales efforts. He was given "direct responsibility for the profitability" of appellant's radio and other broadcast activities. In early 1982, Straight Arrow was experiencing difficulty in selling advertising time for its radio programs. Respondent hired a former colleague, Craig Vanderploeg, as director of marketing in April. However, advertising sales did not improve and, upon reorganization of the sales staff in May, Wenner demoted Vanderploeg to the position of sales representative. Respondent's choice for the position of advertising sales manager was also vetoed by Wenner after Kent Brown-

---

* Straight Arrow Publishers, Inc., appealed from so much of the order as denied its motion to dismiss respondent's claim for punitive damages. That claim was dismissed with prejudice by stipulation of the parties while this appeal was pending. Corporate appellant's appeal is therefore moot.

ridge, Straight Arrow's general manager, expressed doubts about the candidate's experience in broadcast advertising.

After consultation with the board of directors, Wenner sent respondent a lengthy memorandum on May 19, 1982, clarifying respondent's duties and responsibilities. The memorandum pointed out a number of "problem areas that must be corrected immediately", and stated that, while the company was without a president, respondent was to report to the chairman of the board, Wenner. Apparently, the problems were not satisfactorily resolved and, by letter dated June 1, 1982, respondent's employment was terminated.

Two months later respondent instituted this action seeking contractual damages from Straight Arrow for its alleged breach of contract and punitive damages from both Wenner and Straight Arrow. Appellants served their verified answer and counterclaims in September 1982 and the matter remained dormant until June 1986 when appellants moved to dismiss the complaint in its entirety against Wenner and to strike the claim for punitive damages. Although respondent opposed the motion, he did not seek leave to amend the complaint. The motion was denied without prejudice.

In October 1986, appellants renewed their motion to dismiss. They pointed out that the complaint alleged no factual basis for holding Wenner, a corporate officer, personally liable for the alleged breach of respondent's agreement with Straight Arrow. Respondent opposed the motion and cross-moved for leave to amend the complaint by consolidating his four claims into one cause of action, and by adding the statement that Wenner "is a shareholder of Straight Arrow, which is his alter ego under his complete dominion and control."

We find that the court below erred in denying appellants' motion to dismiss and abused its discretion in granting respondent leave to amend the complaint which, even as amended, was still deficient. The original complaint failed to state a cause of action against Wenner. As a corporate officer acting within the scope of his duties, Wenner could not be held personally liable for inducing the corporation to terminate its agreement with respondent absent evidence that Wenner accomplished this by "individual separate tortious acts" (A. S. Rampell, Inc. v Hyster Co., 3 NY2d 369, 378 [1957]; Robbins v Panitz, 61 NY2d 967, 969 [1984]). Nothing in the amended complaint gives rise to the inference that Wenner used fraud, misrepresentation, deceit or other tortious means, or that he

acted purely from malice. Failure to plead in nonconclusory language facts establishing all the elements of a wrongful and intentional interference in the contractual relationship requires dismissal of the action *(Jennings v Burlington Indus.,* 19 AD2d 877, 878 [1st Dept 1963]). The pleading cannot be maintained on bare allegations that Wenner's acts were wanton and wrongful, a legal conclusion drawn from unalleged facts.

Respondent's attempt to state a claim against Wenner under the alter ego theory in the amended complaint also fails for the same reason. Wenner, who was not a party to the corporation's contract, may be held personally liable for its breach if, disregarding the corporate form, he exercised such dominion and control over Straight Arrow's operations that the corporation became his alter ego, a vehicle for purely personal rather than corporate ends *(Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652, 656-657 [1976]; *Weis v Selected Meat Packers,* 91 AD2d 1085, 1086 [3d Dept 1983] [complaint dismissed for failure to state sufficient facts to permit piercing of the corporate veil under the alter ego theory]). Again, the amended complaint contains only a legal conclusion with no factual allegations supporting the alter ego claim, which is "so purely conclusory as to be meaningless" *(East Asiatic Co. v Corash,* 34 AD2d 432, 436 [1st Dept 1970]).

Respondent maintains that leave to amend was proper because the facts to support the alter ego claim against Wenner are uniquely under appellant's control and he has not yet taken Wenner's deposition, notwithstanding the fact that the action has been pending for four years. Respondent made no effort to discover the evidentiary facts either before the action was commenced, as authorized under CPLR 3102 (c), or during the four years after appellants' answer was served.

Although leave to amend a pleading should be freely given (CPLR 3025 [b]), the motion should be denied if the proposed amended pleading would cause prejudice or surprise. The original complaint gave no clue that respondent intended to proceed against Wenner under the alter ego theory, rather than under the theory of tortious interference by a corporate officer. These theories of nonparty liability require different factual proofs. "To disregard the corporate form, it must be established not only that an individual controlled a corporation, but also that the corporation was used for the transaction of [a] shareholder's personal business" *(Weis v Selected Meat Packers, supra,* at 1086). While the acts of the controlling individual need not be tortious to establish liability under

the alter ego theory, they must be so to establish tortious interference.

Finally, we note that a motion for leave to amend a pleading must be supported by an affidavit of merits and evidentiary proof that could be considered upon a motion for summary judgment *(Nab-Tern Constructors v City of New York,* 123 AD2d 571, 572 [1st Dept 1986]; *C&K Realty Co. v ISFC Fabrics Corp.,* 66 AD2d 697, 698 [1st Dept 1978]). The affidavit of respondent's counsel, who offered no excuse for the lengthy delay and who did not have personal knowledge of the underlying facts, was insufficient to support the motion for leave to amend *(Executive Sec. Corp. v Gray,* 67 AD2d 860, 861 [1st Dept 1979]). Respondent's affidavit in opposition to summary judgment was also factually deficient and did not overcome appellant's motion addressed to the sufficiency of the pleadings. Concur—Ross, J. P., Asch, Rosenberger, Ellerin and Wallach, JJ.